UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-20171-Cr (PAS)

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ANDREW CHORLIAN,

    Defendant.
_____/

**DFFENDANT ANDREW CHORLIAN'S OBJECTIONS TO THE
PRESENTENCE INVESTIGATION REPORT**

COMES NOW, the Defendant, ANDREW CHORLIAN ("Mr. Chorlian"), by and through the undersigned counsel, and hereby submits his Objections to the Presentence Investigation Report ("PSI") ) (DE 17) and in support thereof notes the following objections:

**Identifying Data (PSI p. 3)**

1. Mr. Chorlian has never, to his knowledge, used the name Andrew Thorlian.

2. Paragraph ¶ 15 states that the conspiracy involving Mr. Chorlian continued from on or about June 2018 through April 2019. Mr. Chorlian notes that he terminated his relationship with Hydrogen Technology Corporation ("HTC") in December 2018.

3. Pertaining to ¶ 20, we note that Mr. Chorlian did not become aware that the SEC charged HTC with wrongdoing until shortly before he left the company.

4. With respect to ¶ 22, internally the direction to create the token was focused on the platform and that adding blockchain integration to the platform would make the application programming interface ("API") much more valuable and thus potentially generate more revenue

for the company. It was not directed to employees (and Mr. Chorlian) as a method to raise capital for the company (or Kane) by selling the tokens.

5. With respect to ¶ 27, it is important to note that Mr. Chorlian agreed to speak with Moonwalkers only because Kane and Hampton were unable to make the call. Mr. Chorlian did not know at that time that Moonwalkers intended to vet the capabilities of its bot/trading software and was not, to his knowledge, asked to speak with Moonwalkers, to vet the bot. Indeed, prior to this call, Mr. Chorlian, who had no previous employment in the securities business, had never spoken to other market makers and had only a rudimentary knowledge of what function a market maker performed.

6. With respect to ¶ 36, while employed at HTC, Mr. Chorlian did not know that Hydro coins were unregistered securities. Mr. Chorlian was named as a defendant in the SEC action which was filed long after he left the company.

7. With respect to ¶¶ 38 and 40, it was part of Mr. Chorlian's job at HTC to interact with and explain to investors how the Hydro protocol worked even prior to speaking with Moonwalkers.

8. With respect to ¶ 50, as noted earlier, Mr. Chorlian left HTC in December 2018, four months before the conspiracy ended.

9. With respect to ¶ 51, Mr. Chorlian sold his tokens from January 2019 through May of 2019, after the manipulation had already ended and after he left HTC.

10. With respect to ¶ 55, Mr. Chorlian did not know that Moonwalkers was being hired by to assist Hampton, Kane and Mr. Chorlian to sell their own tokens -only the company's.

11. With respect to ¶ 56, when Mr. Chorlian sold his tokens in January through May 2019, he believed that the price manipulation had ended. The price of the coins at the time he sold

them had fallen over 80% from their high and the trading volume dropped from several million dollars daily to a few hundred thousand dollars daily.

Further, Mr. Chorlian and the Government agree that he was not a manager or supervisor in the conspiracy and that no role enhancement is warranted.

The defense further argues (we note that the Government reserves its right to object) that a two level reduction for minor role is warranted since he was "less culpable than most other participants in the criminal activity . . ." U.S.S.G. §3B1.1 *cmt. n.5 w*hen reviewing the facts of this case in their totality, *see United States v. Cabezas-Montano,* 949 F.3d 567, 606 (11th Cir. 2020). Thus, when Mr. Chorlian agreed to speak with Moonwalkers, he had no idea that Kane or Hampton intended to engage in a manipulation of the Hydro token to raise capital for the company. In fact, he only volunteered to have the initial conversation with Moonwalkers because no one else was available to do so.  At the time he was employed at HTC, Mr. Chorlian had no experience in the securities business; had never before dealt with a market maker; and had no real understanding of the function a market maker performed. Indeed, HTC was Mr. Chorlian's second job out of college – each focused on software development – not on trading strategies. Indeed, even at HTC, Mr. Chorlian was basically self-taught as a coder having no prior experience.  We urge that Mr. Chorlian was hired by HTC (at the age of 23) because he was smart - - but not experienced and not likely to ask questions even though he admits that he should have done so and left the company. Mr. Chorlian did not plan or organize the criminal activity; he was not aware of the full scope of the conspiracy; he what not part of the internal meetings with Kane and Hampton and others; he exercised no decision-making authority over the conduct; and had no discretion in carrying out the conspiracy.  In fact, Mr. Chorlian's supervisors were known for being verbally abusive to their employees and utterly demanding of them. Employees did what they were told. Mr. Chorlian spent

his day writing legitimate software and developing legitimate products unaware of the magnitude of the company's financial problems. No one reported to Mr. Chorlian. Mr. Chorlian did receive and sell the tokens he received from HTC but did so after he left HTC and at a time when he believed the manipulation had ended. It is clear that when comparing Mr. Chorlian's conduct with that of his other participants involved in the offense, *United States v. Quijada-Moreno,* Case No. 21-13788, 2023 U.S. App. LEXIS 1056 (11th Cir. Jan. 18, 2023), that a minor role adjustment is warranted.

12. With respect to ¶¶ 80 and 81, Mr. Chorlian's correct birth year is 1994 (not 1984), and his sister, Margaret turned 27 in June 2023.

13. With respect to ¶ 82, the correct number of his residence is 185, not 182.

14. With respect to ¶ 83, Mr. Chorlian and Allie have lived together in Brooklyn since 2020.

15. With respect to ¶ 93, Tessera is no longer in business, and he now has company (OnChain Studios, LLC) providing consulting work for collectors of NFTs.

16. With respect to ¶ 97, Mr. Chorlian's employment was in person at Radnor, PA, not virtually.

17. With respect to ¶ 100, Mr. Chorlian is no longer at Tessera. His monthly income now varies but is less than $2000.00.

18. Finally, with regard to the defendant's Guidelines analysis, a newly approved amendment to the Guidelines will take effect on November 1, 2023, unless it is rejected by Congress. More specifically, the proposed U.S.S.G. § 4C1.1 provides for a 2-level decrease in a defendant's offense level for so-called "zero-point offenders," that is, defendants who have zero criminal history points and meet the following nine other criteria:

1. The defendant must not have received any criminal history points.
2. The defendant must not have received an adjustment for terrorism (covered by § 3A1.4).
3. The defendant must not have used violence or made credible threats of violence in connection with the offense.
4. The offense must not have resulted in death or serious bodily injury.
5. The offense of conviction must not be a sex offense.
6. The defendant must not have personally caused substantial financial hardship (to be determined independently of the application of § 2B1.1(b)(c)).
7. The defendant must not have possessed, received, purchased, transported, transferred, sold, or otherwise disposed of a firearm or other dangerous weapon (or induced another participant to do so) in connection with the offense.
8. The offense of conviction must not involve individual rights (covered by § 2H1.1).
9. The defendant must not have received an adjustment under § 3A1.1 (hate crime motivation or vulnerable victim) or § 3A1.5 (serious human rights offense).
10. The defendant must not have received an adjustment under § 3B1.1 (aggravating role) and must not have been engaged in a continuing criminal enterprise.[1]

19.     Mr. Chorlian meets all of these criteria.

**Wherefore,** for the reasons set forth herein, Mr. Chorlian respectfully requests that the

---

[1] The PSI has recommended a role enhancement under 3B1.1. (PSI ¶66). As discussed above, the Government and defense counsel agree that the adjustment is unwarranted.

PSI be amended to incorporate the above-referenced objections and corrections.

Dated: August 1, 2023

Respectfully submitted,

BACHNER & ASSOCIATES, PC
111 Broadway, Suite 701
New York, NY 10006
T: (212) 344-7778
F: (212) 344-7774

By:
  *Michael F. Bachner*
  Michael Bachner, Esq. pro hac vice counsel

FRIDMAN FELS & SOTO, PLLC
150 Alhambra Circle, Ste. 715
Coral Gables, FL 33134
Tel: (305) 569-7701
Fax: (786) 627-4145

By: *s/Adam Fels*
  Adam Fels, Esq.
  Florida Bar No.: 0114917